UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Case No. 19-CR-117(JBW) |
| | * | |
| | * | Brooklyn, New York |
| | * | March 7, 2019 |
| v. | * | |
| | * | |
| SINMYAH AMERA CEASAR, | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * | | |

TRANSCRIPT OF CRIMINAL CAUSE FOR
ARRAIGNMENT AND PLEADING
BEFORE THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:              JOSHUA G. HAFETZ, ESQ.
                                 Asst. United States Attorney
                                 United States Attorney's Office
                                 271 Cadman Plaza
                                 Brooklyn, NY 11201


For the Defendant:               SAMUEL JACOBSON, ESQ.
                                 Federal Defenders of New York,
                                  Inc.
                                 One Pierrepont Plaza, 16th Fl.
                                 Brooklyn, NY  11201




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 1:22 p.m.)

2              THE CLERK:  Criminal cause for arraignment and

3      pleading, United States vs. Sinmyah Amera Ceasar, case no.

4      19-CR-117.

5              Counsel, can you state your appearances?

6              MR. HAFETZ:  Good afternoon, Your Honor.  Josh

7      Hafetz for the government.  I'm joined at counsel table by

8      Jacqueline Ross of the FBI.

9              THE COURT:  Good afternoon.

10             MR. JACOBSON:   Good afternoon, Your Honor.  Sam

11     Jacobson, Federal Defenders, on behalf of Ms. Ceasar, who's

12     present next to me.  We're joined by Carina Bruka (ph) a

13     paralegal in our office.

14             THE COURT:  Good afternoon.

15             So could you all come up and approach the bench,

16     please.

17             (The defendant is sworn.)

18             THE CLERK:  Could you please also just state your

19     name for the record.

20             THE DEFENDANT:  Sinmyah Amera Ceasar.

21             THE COURT:  All right.  Good afternoon.

22             THE DEFENDANT:  Good afternoon.

23             THE COURT:  All right.  And what is Ms. Ceasar

24     going to do today?

25             MR. JACOBSON:   Your Honor, she needs to be

1  arraigned on the information that was filed in this case and

2  she'd like to waive indictment and proceed before Your Honor

3  and plead guilty to the sole count in the information.

4       THE COURT:  Okay.  And there's an agreement as

5  well?

6       MR. HAFETZ:  There is, Your Honor.

7       MR. JACOBSON:   There is, Judge.

8       THE COURT:  Okay.  Great.

9       So why don't we start with the information.  Have

10  you had a chance to read the information?

11       THE DEFENDANT:  Yes, sir.

12       THE COURT:  So I'm just going to advise you you

13  have the right to remain silent.  Anything you say here today

14  can be used against you.

15       Even if you've made statements to the government,

16  you don't have to say anything else. And you can consult with

17  your lawyer at any time if you wish.

18       Do you understand?

19       THE DEFENDANT:  Yes.

20       THE COURT:  So it's a very short information. I'm

21  just to read it.

22       It says, "Obstruction of an official proceeding. In

23  or about and between June, 2018 and July, 2018, both dates

24  being approximate and inclusive, within the Eastern District

25  of New York, the defendant, Sinmyah Amera Ceasar, while

4

1    released under Title 18, United States Code, Chapter 207, did

2    knowingly, intentionally and corruptly alter, destroy,

3    mutilate and conceal one or more records, documents and other

4    objects, to wit, Facebook messages and text messages with the

5    intent to impair the object's integrity and availability for

6    use in one or more official proceedings, to wit, A, bail

7    proceedings in the Eastern District of New York, and B,

8    sentencing proceedings in the Eastern District of New York.

9              Do you have any questions about the information?

10             THE DEFENDANT:  No, sir.

11             THE COURT:  And are you satisfied that your client

12   understands her rights and the information?

13             MR. JACOBSON:   Yes.

14             THE COURT:  All right.  So I also have a here a

15   waiver of indictment.

16             And do you understand what an indictment is?

17             THE DEFENDANT:  Yes.

18             THE COURT:  So on this form it appears that there's

19   a signature above your name.

20             Did you read the waiver form?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And did you sign it?

23             THE DEFENDANT:  Not yet.

24             MR. JACOBSON:   You signed the copy.

25             THE COURT:  Okay.   You signed another copy?

1        THE DEFENDANT:  Oh, yes.  Yes.

2        THE COURT:  Okay.  So your copy you need to sign

3   and this copy -- yeah.

4        And before you signed it, did you discuss it with

5   your lawyer and discuss with him what it means to waive an

6   indictment?

7        THE DEFENDANT:  Yes.

8        THE COURT:  And are you making this decision

9   voluntarily?

10        THE DEFENDANT:  Yes.

11        THE COURT:  DO you have any questions about what

12   you're doing?

13        THE DEFENDANT:  No.

14        THE COURT:  All right.  So, Mr. Jacobson, can you

15   just explain that it is, without breaching attorney/client

16   confidentiality, what it is your explained to Ms. Ceasar, the

17   significance of waiving the indictment is.

18        MR. JACOBSON:  That ordinarily she would have the

19   right to have a grand jury go -- to have the government

20   before a grand jury to return an indictment and that by

21   proceeding on the information, she's waiving that right.

22        THE COURT:  Okay.

23        MR. JACOBSON:  And that the government would have

24   to show sufficient evidence to return the indictment.

25        THE COURT:  And do you feel that she understood

6

1    your discussions?

2              MR. JACOBSON:   Yes, she did.

3              THE COURT:  So I'm just going to go through this as

4    well.

5              So you understand that -- you understand what a

6    grand jury is.

7              THE DEFENDANT:  Yes.

8              THE COURT:  So a grand jury is a group of citizens

9    who are part of an entity that evaluates whether the

10   government has enough proof to bring criminal charges against

11   someone for a felony.

12             Do you understand?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And you have a right, as your lawyer

15   said, to have the grand jury review this evidence and decide

16   whether there's probable cause before they bring these formal

17   criminal charges against you.

18             Do you understand that?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  And it's unclear at this -- I mean, the

21   grand jury could decide not to indict you.

22             You know, we haven't heard what evidence the

23   government's going to bring.  The grand jury hasn't been

24   empaneled in your case and the grand jury hasn't made a

25   decision whether or not to indict you.

7

1            So it is possible that a grand jury may or may not

2    indict you.

3            Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  And it's -- these are serious charges

6    that are in the information.

7            And if you proceed by way of an information, the

8    grand jury will not have the opportunity to screen the

9    charges and determine if there's probable cause to bring

10    them.

11            Do you understand?

12            THE DEFENDANT:  Yes.

13            THE COURT:  So that's -- and your lawyer explained

14    that to you thoroughly, as I hear.

15            So do you have any questions at all about what

16    you're doing?

17            THE DEFENDANT:  No, sir.

18            THE COURT:  And are you voluntarily, as I asked

19    before, giving up your right to have a grand jury evaluate

20    the evidence and decide whether to bring forth an indictment?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Okay.  So I'm going to ask you a lot of

23    questions and you will be answering them under oath.

24            If you make any false statements, you could be

25    prosecuted for perjury.

8

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  If you have any questions at all, feel

4     free to consult with your lawyer privately, or to ask me, or

5     both.

6          Okay.  So I'm going to ask you, as I said, a number

7     of questions.  The first one is what is your full name?

8          THE DEFENDANT:  Sinmyah Amera Ceasar.

9          THE COURT:  How old are you?

10          THE DEFENDANT:  24.

11          THE COURT:  What's the last level of schooling that

12     you completed?

13          THE DEFENDANT:  I didn't obtain my high school

14     diploma.  I went to 12th grade, but I dropped out before my

15     senior year.

16          THE COURT:  Okay.

17          THE DEFENDANT:  Before my senior graduation.

18     Sorry.

19          THE COURT:  Okay.  Are you now or have you recently

20     been under the care of a doctor or a psychiatrist?

21          THE DEFENDANT:  Yes, I do see a psychologist.

22          THE COURT:  Okay.  And I think you're getting some

23     medical assistance as well?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And the medical assistance, I know

9

1      we've talked about it in other proceedings.

2              Are you taking any -- as a result of seeing either

3      a doctor or a psychiatrist, are you currently taking any

4      medication?

5              THE DEFENDANT:  Yes.

6              THE COURT:  In the last 24 hours, have you taken

7      any medicine or pills?

8              THE DEFENDANT:  No. Only for my health, like high

9      blood pressure and for like my asthma, stuff like that.  But

10     it has nothing to do with mental -- psych meds.

11             THE COURT:  Okay.  Do for your physical conditions

12     you've been taking medication --

13             THE DEFENDANT:  Yes.

14             THE COURT:  And do you take that everyday?

15             THE DEFENDANT:  As needed.

16             THE COURT:  Have you taken any medication in the

17     last 24 hours?

18             THE DEFENDANT:  No.

19             THE COURT:  No.  Does the medication you take for

20     blood pressure and for other physical issues, does that ever

21     affect your ability to think, or to concentrate, or to pay

22     attention?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  And have you taken any psychiatrist

25     medications?

1          THE DEFENDANT:  No.

2          THE COURT:  In the past 24 hours, have you taken

3     any narcotic drugs or alcoholic beverages?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Have you ever been hospitalized or

6     treated for a narcotic addiction?

7          THE DEFENDANT:  No.

8          THE COURT:  Or alcoholism.

9          THE DEFENDANT:  No.

10          THE COURT:  For a mental or emotional problem,

11     other than what you just told me?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  Is your mind clear now?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And do you understand why you're here

16     and what's happening here today?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Okay.  So these are all standard

19     questions that, obviously, I have to ask.

20          So I'm just going to ask your lawyer a few

21     questions and then come back to you.

22          Have you discussed this matter fully with your

23     client?

24          MR. JACOBSON:  I have, Your Honor.

25          THE COURT:  Does she understand the rights that she

11

1      would be waiving by pleading guilty?

2                MR. JACOBSON:   She does.

3                THE COURT:  Is she capable of understanding the

4      nature of these proceedings?

5                MR. JACOBSON:   Yes, she is.

6                THE COURT:  Do you have any doubts as to her

7      competency to plead at this time?

8                MR. JACOBSON:   No, Your Honor.

9                THE COURT:  In preparing for this plea, have you

10     advised her of the possible maximum and minimum sentence and

11     fine?

12               MR. JACOBSON:   I have.

13               THE COURT:  Have you advised her of other possible

14     penalties that could be imposed and how it might affect her

15     in other proceedings she has before the court?

16               MR. JACOBSON:   Yes, I have.

17               THE COURT:  Have you advised her -- and I know this

18     may not be applicable, that if she's not a citizen of the

19     U.S. a guilty plea could result in deportation?

20               MR. JACOBSON:   Yes.

21               THE COURT:  Have you explained to her how the

22     sentencing guidelines work and that there's no guarantee at

23     this time what her sentence will be?

24               MR. JACOBSON:   Yes, I did.

25               THE COURT:  Do you think that she understood all of

12

1    your discussions?

2                MR. JACOBSON:   I believe so.

3                THE COURT:  So you heard what your lawyer said.  Do

4    you agree with what he just said?

5                THE DEFENDANT:   Yes.

6                THE COURT:  And have you discussed your case with

7    him fully?

8                THE DEFENDANT:  Yes.

9                THE COURT:  Are you satisfied to have him represent

10   you?

11               THE DEFENDANT:  Yes.

12               THE COURT:  Okay.  So the next series of questions

13   has to do with your rights, because when you plead guilty

14   you're doing it now with a full array of constitutional and

15   legal rights. Once you plead guilty, you'll be giving up some

16   of those rights.

17               So the first question is do you understand that

18   it's your right to plead not guilty if you wish to?

19               THE DEFENDANT:  Yes.

20               THE COURT:  And if you continue to plead not

21   guilty, you would have a right under the Constitution and

22   laws of this country to a speedy and public trial by jury,

23   with the help of your lawyer, on the charges contained in the

24   information.

25               Do you understand?

1           THE DEFENDANT:  Yes.

2           THE COURT:  And if you can't afford to hire an

3   attorney, the court will make sure that you have an attorney

4   who's appointed to represent you all the way through trial,

5   at every stage of this case, including through appeal if you

6   were convicted.

7           Do you understand?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And if you decided to go to trial, you

10  would be presumed innocent.  The government would have to

11  prove your guilt by what's called competent evidence that's

12  admissible in court and by proof beyond a reasonable doubt.

13          Do you understand?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Even if you did everything the

16  government has accused you of, if it can't prove beyond a

17  reasonable doubt that you're guilty, the jurors would have a

18  duty to find not guilty.

19          Do you understand?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Okay.  Any questions so far?

22          THE DEFENDANT:  No, sir.

23          THE COURT:  So if you decided to go to trial, the

24  government would have to bring its witnesses to court.  They

25  would have to testify.  You would be there to listen to them.

1          Your lawyer would have a right to cross examine

2     them, to object to the government's evidence, to present

3     evidence in your defense and to subpoena or to call witnesses

4     to testify on your behalf.

5          Do you understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And if you did go to trial, you would

8     have a choice whether or not to testify.

9          If you wish to, you could testify in your own

10    defense, but you don't have to because under the Fifth

11    Amendment, you have a right to remain silent and not to

12    incriminate yourself.

13         Do you understand?

14         THE DEFENDANT:  Yes.

15         THE COURT:  So if you decided to go to trial, but

16    not to testify, Judge Weinstein, or whoever the judge is

17    who'll be supervising your case, would instruct the jurors

18    that they couldn't hold that against you and assume that

19    you're guilty just because you didn't testify in your

20    defense.

21         Do you understand?

22         THE DEFENDANT:  Yes.

23         THE COURT:  All right.  Any questions so far?

24         THE DEFENDANT:  No.

25         THE COURT:  So are you willing to give up your

1   right to a trial, the right to remain to silent, the right to

2   confront witnesses and the other rights that have just been

3   discussed?

4            THE DEFENDANT:  I do.

5            THE COURT:  Okay.  So do you have a copy of the

6   agreement there to follow along?

7            MR. HAFETZ:  Your Honor, I apologize for the

8   interruption.

9            Does Your Honor have a copy of the written consent

10  to proceed before the magistrate?

11           THE COURT:  Oh, you know, that's a good question.

12           I don't think we went through that, did we? And I

13  don't think I have a -- I do have it.  Thank you.  Thank you

14  very much.

15           MR. HAFETZ:  You're welcome, Judge.

16           THE COURT:  Yes.  So this is a consent form.  And

17  in it it says that the defendant and the government are

18  consenting to have a magistrate judge hear the guilty plea,

19  and make a recommendation to the district judge.

20           Did you sign this consent?

21           THE DEFENDANT:  Yes.

22           THE COURT:  You did sign it?

23           THE DEFENDANT:  It's on there (indiscernible).

24           THE COURT:  And before you signed it, did you

25  discuss it with your lawyer and understand what you were

1    doing?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And do you understand that if you wish,

4    Judge Weinstein would be happy to hear your guilty plea and

5    to -- would not be upset in any way.  It's totally all right

6    if you'd rather have him hear the plea than me.

7              Do you understand?

8              THE DEFENDANT:  I do.

9              THE COURT:  Okay.  And are you agreeing to have me

10   hear the plea voluntarily?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you have any questions about what

13   you're doing?

14             THE DEFENDANT:  No, sir.

15             THE COURT:  Okay.  Thanks.  And thanks for

16   mentioning that.

17             Okay.  All right. So let's take a look at the plea

18   agreement.  It's been marked as Court Exhibit No. 1 and on

19   the last page there's a signature page and there's a

20   signature above your name there.

21             Did you sign the plea agreement?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you want to see this copy?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Okay.  And before you signed it, did

1    you have a chance to read it carefully and discuss it with

2    your lawyer?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Was he able to answer all of your

5    questions?

6              THE DEFENDANT:  Yes.

7              THE COURT:  So I'm -- let me ask the government

8    first, is this the sole agreement between the parties on this

9    case?

10             MR. HAFETZ:  It is, Your Honor.

11             THE COURT:  And the defense?

12             MR. JACOBSON:   Yes, Your Honor, aside from some

13   proffer agreements executed between the parties.

14             THE COURT:  Okay.  All right.

15             So looking at page 1, paragraph 1, says that you'll

16   waive indictment and plead guilty to the information that we

17   went through earlier charging you with obstruction of

18   justice.

19             It says in addition you stipulate and agree that at

20   your guilty plea you will state that you committed the

21   obstruction of justice while on release in the Eastern

22   District of New York, pursuant to the Bail Reform Act, and

23   that you knowingly made multiple false statements during your

24   January 2nd, 2019 interview with the government, including

25   the false statements that are included in Attachment A to the

18

1     plea agreement.

2              Do you understand that provision?

3              THE DEFENDANT:  Yes.

4              THE COURT:  So if you plead guilty to this count,

5     the charge carries with it a minimum of zero years in prison

6     and a maximum of 20 years.

7              Do you understand?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And if you are sentenced to prison on

10    this charge, the maximum period of time you could be placed

11    on supervised release after you get out of prison is three

12    years and there is a penalty if you violate any conditions of

13    your release.

14             And that would be that you could be sentenced back

15    to prison for up to two years without any credit for the time

16    you'd been serving in prison on this sentence or on

17    supervised release.

18             That's on page 2.  It's provision B.

19             And do you understand what supervised release is?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Okay.  So you'd be released with

22    conditions.  You'd have to follow them and there is, as I

23    mentioned a serious penalty if you don't follow the

24    conditions of release.

25             Do you have any questions about that?

19

1          THE DEFENDANT:  No, sir.

2          THE COURT:  All right.  There's a maximum fine of

3    $250,000.  There's a fee called a special assessment of $100

4    that you would have to pay, and then G says there is also a

5    penalty of administrative forfeiture, as set forth in

6    paragraph 8.

7          Paragraph 8 says that you consent to the

8    administrative forfeiture of all right, title and interest in

9    the following assets. This is on page 7.

10          It says one silver HD [sic] laptop bearing serial

11    number 5CG7295MQW, with a power cord, and one J3 Luna Pro

12    Galaxy Android cellular phone, IMEI number 354308089279698,

13    with the assigned telephone number of 347-452-5345.

14          Are you familiar with those assets?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Okay.  And it says that if you don't

17    forfeit the assets and execute any document to make that

18    happen, on timely notice there would be -- this may

19    constitute a material breach of the agreement.

20          And at that time, if there were such a breach, the

21    defendant would not be entitled to withdraw the plea, but the

22    U.S. Attorney's Office may bring additional criminal charges

23    against you.

24          Do you understand what that provision means?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Mr. Jacobson, have you gone through

2    that provision with Ms. Ceasar?

3          MR. JACOBSON:   Yes, Your Honor.

4          THE COURT:  And are you satisfied she understands

5    it?

6          MR. JACOBSON:   She does.

7          THE COURT:  Okay.  Now going back to page 2, at the

8    end of paragraph 1, there's a paragraph that talks about how

9    sentencing works in this case and the other case that you

10   have.

11         It says that the sentence imposed for the

12   obstruction of justice offense, that's the one in this case,

13   may run consecutively for the sentence imposed for the

14   material support offense, for which I think you already have

15   a sentencing date, as defined in paragraph 3.

16         Additionally -- well, first of all, do you

17   understand what that means, for the sentences to run

18   consecutively.

19         THE DEFENDANT:  No.  I don't understand.  What is

20   consecutive?

21         THE COURT:  Mr. Jacobson, would you like to explain

22   it first and then I'll do it?

23         MR. JACOBSON:   Sure. If I could have a moment,

24   Your Honor.

25         (Defendant and counsel confer.)

1          MR. JACOBSON:   We're ready to proceed, Judge.

2     Thank you.

3          THE COURT:   Okay.   So do you understand what that

4     means, consecutively, now at this point?

5          THE DEFENDANT:   Yes.

6          THE COURT:   Okay.   So, for example, well, that

7     paragraph refers to the material support offense and that is

8     described in paragraph 3, which says that you previously pled

9     guilty to one count of providing material support to a

10    foreign terrorist organization in violation of 18 U.S. Code

11    2339(b)(A)(1).

12          And the government and the defendant will request

13    that you be sentenced on the material support offense at the

14    same time as your sentencing for the obstruction of justice

15    offense.

16          Do you understand that?

17          THE DEFENDANT:   Yes.

18          THE COURT:   Okay.   And it also says that the

19    presentence investigation report that was prepared by the

20    Probation Department for this district determined that your

21    total offense level for the material support offense is 40

22    under the guidelines.

23          Do you understand how the guidelines work and what

24    they mean, or do you want me to go into that?

25          THE DEFENDANT:   Well, can you explain that to me?

22

1              THE COURT:  Sure.  So let me just talk about

2     sentencing for just a minute.

3              Do you want to say anything before I do it, or --

4              MR. JACOBSON:   No.  We've discussed it.  I think

5     she'd like to hear Your Honor's --

6              THE COURT:  Okay.  Great.

7              All right.  So at this point in both of your cases

8     there's no guarantee what your sentence will be.

9              And the court considers a number of factors in

10    deciding how to sentence you. One of them is the sentencing

11    guidelines.

12             So the guidelines are just guides.  They're rules

13    that exist that Judge Weinstein has to refer to.  He's going

14    to calculate what he thinks your guideline range is and then

15    decide whether he should sentence you within the guidelines,

16    above the guidelines or below the guidelines.

17             And there's no guarantee at this time what your

18    guideline range is going to be, or what Judge Weinstein will

19    decide as far as a sentence goes.

20             But the guidelines are one factor in deciding how

21    to sentence you.  There are other factors, and I'm just going

22    to read them out to you and if you have any questions, just

23    let me know. They're not written down there on that page

24    there.  And then we'll get back to the guidelines.

25             So in deciding what sentence to give you, the court

23

1   has to consider the nature and the circumstances of the

2   offenses that you're charged with, your history, your

3   characteristics, what you're like, and then also the need for

4   the sentence.

5           And that's -- I'm just reading from 3553 of 18 U.S.

6   Code.

7           The need for the sentence to reflect the

8   seriousness of the offense, to promote respect for the law,

9   to provide just punishment, in other words, what's fair.

10  Provide deterrents to criminal conduct.  In other words, to

11  make sure that it doesn't happen again.  To protect the

12  public from further crimes that you might commit and to

13  provide you with needed educational or vocational training,

14  medical care, or other correctional treatment in the most

15  effective manner. Those are some of the factors that the

16  court looks at.

17          So they look at your individual characteristics,

18  what would be fair, and the other things that I just

19  mentioned.

20          Do you have any questions about that that you'd

21  like to discuss with your lawyer, or ask me about?

22          THE DEFENDANT:  No, I understand.

23          THE COURT:  Okay.  All right.

24          So getting back to the sentencing guidelines, the

25  guidelines are just one factor there.

1          So Judge Weinstein's going to calculate your

2    guideline range and then decide whether to sentence you, as I

3    said, within the guidelines, above the guidelines or below

4    the guidelines.

5          And in paragraph 3 you have agreed to the

6    calculation for the material support offense that is listed

7    in paragraph 3.

8          And that is that there's a base offense level of

9    26, there is -- well, actually, let me let the government --

10   this is the government's --

11         MR. HAFETZ:   That's correct, Your Honor.

12         The calculation that she has stipulated to and will

13   not take a FATICO hearing on it is as follows, for the

14   material support offense.

15         It's a level 26 base offense level, plus an

16   enhancement for two points under Section 2M5.5(b)(1)(E) and

17   then a 12 point enhancement, because the offense was intended

18   to promote a federal crime of terrorism.  And that's pursuant

19   to Section 3A1.3.

20         And again, that results in a total offense level of

21   40 for the material support offense.

22         THE COURT:   Thank you.  And what does it mean, just

23   for the defendant's sake, that she's not going to seek a

24   FATICO hearing with respect to any aspect of the calculation?

25         MR. HAFETZ:   That she's not going to challenge at

1    sentencing the factual basis, or legal basis, of any of those

2    enhancements.  That's she's agreeing with the government, and

3    probation, which as I said, or you said, already calculated

4    that as her offense level.  And she's not in any way going to

5    challenge that offense level.

6              THE COURT:  Okay.  Do you have any questions about

7    what was just said?

8              THE DEFENDANT:   No.

9              THE COURT:  Okay.  And then going to the charge in

10   the information, which is the obstruction of justice charge,

11   would the government mind placing on the record its

12   calculation, again, of the guidelines?

13             MR. HAFETZ:  Certainly, Your Honor.

14             The total projected calculation for that is I think

15   contained on page 3 and 4 of the plea agreement, and that's a

16   30 to 37 month, and that's assuming, again, the defendant

17   falls within category 1, which I believe she does fall in.

18             So that's a total, again, of 30 to 37 months.

19             THE COURT:  Okay.

20             MR. HAFETZ:  And, again, Your Honor, the defendant

21   has also stipulated, as noted on the top of page 4, the same

22   thing I just said, for the offense level for the material

23   support.

24             In other words, for the obstruction of just offense

25   she's stipulating to the guidelines calculation put forward

1    in the plea agreement on page 3, which includes a base level

2    of 14, an enhancement for the substantial interference with

3    the administration of justice, which is three points, an

4    additional two points for the destruction of a significant

5    volume of records, and another three points because she

6    committed the offense while on pretrial release.

7               THE COURT:  Thank you.

8               So do you have any questions about what's been said

9    so far?

10              THE DEFENDANT:  No, sir.

11              THE COURT:  So consecutive sentence would mean that

12   since you have two charges that you're being sentenced on,

13   the charges could run one after the other.

14              So let's say, for example -- well, let's take the

15   level of imprisonment that the obstruction count provides for

16   under the guideline that's been stipulated to is 30 to 37

17   months.

18              So let's say Judge Weinstein gave you 30 months on

19   the obstruction of justice and then turning to the second

20   one, the material support charge, that carries a range of

21   imprisonment of up to 292 to 365 months.

22              If Judge Weinstein were to give you 292 months, you

23   would start serving those -- that term after you finished

24   serving the term for the obstruction charge.

25              So you'd serve one completely and then serve the

1          other one.

2                    Do you understand?

3                    THE DEFENDANT:  Yes.

4                    THE COURT:  Okay.  But, again, there's no guarantee

5          what Judge Weinstein will do.  At this point, it's up to

6          Judge Weinstein to determine, based on all the factors that

7          the statute provides for, what the fair sentence would be at

8          this time.

9                    Do you have any questions so far?

10                   THE DEFENDANT:  No.

11                   THE COURT:  Okay.  So next you've agreed not to

12         appeal or otherwise challenge in any way your conviction or

13         your sentence if the court gives you a term of imprisonment

14         of 365 months or less.

15                   Do you understand?

16                   THE DEFENDANT:  Yes.

17                   THE COURT:  Okay.  Do we need to go through the

18         entire paragraph 6?  Would that make sense?

19                   MR. HAFETZ:  No, Your Honor.  There's two things

20         I'd like to put on the record so that they're just clear for

21         later.

22                   Number one is that as noted in the plea agreement,

23         that the new appellate waiver number that Your Honor just

24         described of 365 months or below, supercedes and entirely

25         replaces anything and any prior agreement between the

1      government and the Unites States.

2            And that was specifically an agreement signed on

3      February 13th of 2017.   That's number one.

4            Number two, before we leave the subject of

5      punishment, I do think it's important to note, and I

6      apologize if Your Honor was getting to it, but that the

7      violation of 18 USC 3147, which the defendant is going to

8      allocute today, the punishment for that has a maximum term of

9      ten years in imprisonment, and it must run consecutive to any

10     other sentence imposed on the defendant.

11           THE COURT:  All right.

12           Is there anything else in paragraph 6 that needs to

13     be placed on the record?

14           MR. JACOBSON:   Only one point of clarification. It

15     must run consecutive to today's count of 18 USC 1512.  It

16     doesn't have to be imposed consecutive to the material

17     support sentence.  I know that's sort of an academic --

18           MR. HAFETZ:   That's fine, Judge. I believe the

19     statutory language is to any other sentence.  That's why it's

20     worded the way it is in the plea agreement, but I'm not going

21     to contest as a factual matter that that's accurate.

22           THE COURT:  Okay.  All right.

23           Is there -- getting back to the earlier charge, I

24     think we've done -- we've gone through all of paragraph 1 and

25     we've now completed everything in paragraph 2.

1           Is that correct?

2           MR. HAFETZ:  Yes, Judge.

3           THE COURT:  So do you have any questions about

4    anything having to do with sentencing at this time?

5           THE DEFENDANT:  No.

6           THE COURT:  Okay.

7           MR. HAFETZ:  Judge, I apologize.

8           Before you move on, I just also just want to make

9    clear, paragraph 4, because we've talked about each offense

10   in the stipulation as regards to each offense.

11          She has, the defendant, in the plea agreement,

12   pursuant to paragraph 4, agreed that under the grouping that

13   will have to take place, because these are two separate

14   offenses, that she has stipulated that her total combined

15   offense level is 40 and she's not going to challenge that

16   offense level.

17          THE COURT:  Yes.

18          MR. HAFETZ:  Okay.  I just want to make sure she

19   understands that.

20          THE COURT:  Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  I'm going to go through paragraph 4, as

23   that's next on the list anyway.

24          MR. HAFETZ:  Thank you, Judge.

25          THE COURT:  So let's turn to page 4, paragraph 4.

1    So pursuant to the grouping analysis, which means the two

2    charges, the material support offense and the obstruction

3    offense, the total offense level for the combination of those

4    two charges is 40.

5              You stipulate or agree that your total combined

6    offense level is 40 under the guidelines, and this level does

7    carry with it a range of imprisonment of 292 to 365 months,

8    assuming that you fall within criminal history category 1.

9    In addition the sentence imposed pursuant to 3147.

10             Do you have any questions about that?  Have you

11   discussed that with your lawyer?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  Any questions?

14             THE DEFENDANT:  No.

15             THE COURT:  Mr. Jacobson, are you satisfied that

16   Ms. Ceasar understand this fully?

17             MR. JACOBSON:   Yes, Your Honor.

18             THE COURT:  Are you satisfied that she understands

19   every element of the plea agreement?

20             MR. JACOBSON:  I am.

21             THE COURT:  Okay.  Is there anything else in the

22   plea agreement that either party would like to put on the

23   record, or ask questions about?

24             MR. HAFETZ:  Nothing from the government, Judge. I

25   think that's clear.

31

1          MR. JACOBSON:   Not from Ms. Ceasar.  Thank you.

2          THE COURT:  Okay.  Is there anything you'd like to

3    ask your lawyer privately or ask me about your case at this

4    time?

5          THE DEFENDANT:  No.

6          THE COURT:  Are you ready to plead?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Is there any reason why Ms. Ceasar

9    should not plead guilty to the obstruction offense?

10         MR. JACOBSON:   No, Your Honor.

11         THE COURT:  As to the offense in the information,

12   obstruction of an official proceeding, how do you plead;

13   guilty or not guilty?

14         THE DEFENDANT:  Guilty.

15         THE COURT:  Are you pleading guilty voluntarily?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Has anybody forced you or threatened

18   you to make you agreed to plead guilty?

19         THE DEFENDANT:  No.

20         THE COURT:  Has anyone promised you anything that's

21   not in the plea agreement to make you agree to plead guilty?

22         THE DEFENDANT:  No.

23         THE COURT:  Has anyone promised you what your

24   sentence will be?

25         THE DEFENDANT:  No.

1           THE COURT:  So can you tell me in your own words

2     what it is that makes you guilty of this charge?

3           THE DEFENDANT:  At some point between June, 2018

4     and July, 2018, when I was out on bail, I knowingly and

5     intentionally deleted some Facebook messages. I did this

6     because I did not want Pretrial or the government to find

7     them.

8           I also had a meeting with the government around

9     January the 2nd of 2019 and I told them that I had not used

10    the name Umnatella(ph) when, in fact, I had.  I also told

11    them that I did not create and use email account

12    ExoticD123@gmail.com when, in fact, I had.

13          THE COURT:  Is it satisfactory to the government?

14    Is there anything -- questions you'd like to ask or to add?

15          MR. HAFETZ:  Just in terms of where she committed

16    these offenses, Your Honor.

17          MR. JACOBSON:   We would stipulate that she was

18    released in the Eastern District of New York, although she

19    was residing in the Southern District at the time.

20          THE COURT:  Okay.  Are you challenging venue in any

21    way?

22          MR. JACOBSON:   No, Your Honor.

23          THE COURT:  Are you stipulating to venue in this

24    district?

25          MR. JACOBSON:   We are.

1          THE COURT:  Okay.

2          MR. HAFETZ:  Your Honor, I'd just note for the

3    record that at the time the defendant deleted the messages

4    that she's talking about and during that time period she was

5    -- she was out on bail but also was facing sentencing

6    proceedings within the Eastern District of New York.

7          MR. JACOBSON:  She was aware of that, Your Honor.

8          THE COURT:  Yes.  Is that correct?

9          THE DEFENDANT:  Yes.

10         THE COURT:  And you were on pretrial release, as

11   you mentioned, from the Eastern District of New York, but in

12   a facility that was outside the district.

13         THE DEFENDANT:  Yes.

14         MR. HAFETZ:  And the last part, Your Honor, is just

15   to verify the defendant understood when she committed the

16   offense of deleting those messages she was aware that she

17   faced additional punishment, separate from the offense

18   itself, for committing a violation of her release conditions.

19         MR. JACOBSON:  She was aware that she could be

20   punished for violating her conditions, Your Honor. I don't

21   know that she was aware specifically of 18 USC 3147, but she

22   certainly knew that there could be additional punishment for

23   violating conditions of release.

24         THE COURT:  Well, when you were released on

25   pretrial release, you were told that you had to follow those

34

1    conditions, and failure to do so could result in revocation

2    of the bond, as well as punishment for failing to comply with

3    the conditions of your bond.  That's correct, isn't it?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  All right.

6              MR. HAFETZ:  Your Honor, I don't think there would

7    any objection to stipulating, in fact, that the defendant, in

8    fact, signed a from as part of her conditions of release,

9    which stated the sum and substance of 18-3147, which is that

10   she faced a penalty of up to ten years for committing a

11   violation while on release. I have a copy of it.

12             MR. JACOBSON:  If I could just review it for a

13   moment, Your Honor.

14        (Pause.)

15             MR. JACOBSON:  Thank you, Judge.  And we would

16   stipulate that the parties, in fact, signed that rider to the

17   bond.

18             THE COURT:  Do you recall that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Okay.

21             MR. HAFETZ:  Judge, I have one more thing.  May I

22   talk to defense counsel for one moment?

23             THE COURT:  Yes.

24        (Counsel confer.)

25             MR. JACOBSON:  Your Honor, I think the government

1      is requesting some additional allocution on a number of

2      points.

3              If I could just briefly confer with Ms. Ceasar

4      before we proceed?

5              THE COURT:  Yeah, and before you do that, I just

6      want to remind you I think this was told when you had your

7      original plea, but there's no longer parole in the federal

8      system.  We do have parole in the state system, so that if

9      you're sentenced to prison, there's no early release on

10     parole.  Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Okay.

13         (Counsel and defendant confer.)

14             MR. JACOBSON:   Your Honor, I think we're ready to

15     proceed.

16             THE COURT:  All right.

17             MR. JACOBSON:   The government had simply wanted

18     clarification that the false statements that Ms. Ceasar had

19     allocuted to were made knowingly and intentionally and I

20     believe Ms. Ceasar can confirm that, in fact, they were.

21             THE DEFENDANT:  The knowingly and intentionally

22     false statement that I made about -- of me using

23     Umnatella(ph), I had lied to the government about.

24             THE COURT:  I'm sorry. I didn't hear --

25             THE DEFENDANT:  Using Umnatella.

1          THE COURT:  Yes.

2          THE DEFENDANT:  They had asked me if I ever used or

3    sent any message.

4          THE COURT:  Yes.

5          THE DEFENDANT:  I used Umnatella and I said I

6    didn't and I made a false statement to the government.

7          THE COURT:  And you knowingly made that false

8    statement for the purpose --

9          THE DEFENDANT:  Yes.

10          THE COURT:  -- for the purpose of concealing what

11   you had done. Is that correct?

12          THE DEFENDANT:  Yes.

13          THE COURT:  All right. Is that what the government

14   was looking for?

15          MR. HAFETZ:  I'd ask for it for both, Judge.

16   That's what's stipulated to in the Schedule A.

17          That's sort of the point of the whole rider is that

18   she knowingly admitted and intentionally -- as it read in the

19   rider, knowingly and intentionally made multiple false

20   statements during that interview, including, number one and

21   number two.

22          Number one she just allocuted was knowing and

23   false.  She's yet to allocuted to the second one.

24          THE DEFENDANT:  All the false statements I made was

25   knowingly and intentional.

1           MR. HAFETZ:  That's sufficient.  Thank you, Judge.

2           THE COURT:  And that's in the January, 2019

3   interview.  January 2nd?

4           MR. HAFETZ:  January 2nd.

5           THE COURT:  Is that correct?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Okay.  So just to summarize, under the

8   obstruction charge, 18 U.S. Code 1512(c), you're telling me

9   that you destroyed information, in effect, altering,

10   destroying or concealing it, with the intent of making -- of

11   concealing from the government the information that was

12   contained in -- the information that was contained and

13   specifically preventing that information from being used in a

14   bail revocation proceeding.

15           MR. JACOBSON:  Your Honor, I guess I would use --

16   I think the word "delete" is more precise here, as opposed to

17   destroy, because the government was ultimately able to obtain

18   the information.

19           MR. HAFETZ:  I want to clarify that.  That's true

20   in certain cases and in other cases not at all.  So delete

21   and destroy is appropriate.

22           THE COURT:  Delete and destroy?

23           MR. HAFETZ:  The point is though she deleted and

24   destroyed the message with the intent, as Your Honor said, to

25   prevent their use in a bail and sentencing proceeding,

1   correct?

2           THE COURT:  Is that what you meant?

3           MR. JACOBSON:   I think the thrust of what I was

4   trying to say is that destroy has a technical legal meaning

5   here and she's allocuting to the factual basis of what

6   constitutes that destruction, which is deleting the messages.

7           THE COURT: Right.  And concealing. I mean, it

8   could be -- right.  Right. So it's deleting it with the

9   intent of either destroying or concealing it.  Is that

10  correct?

11          THE DEFENDANT: Yes.  I'm sorry.

12          THE COURT:  Okay.  And the intent was to impair the

13  availability of that information in any bail revocation

14  proceeding and in sentencing proceedings in this district?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Okay.  Is there anything else that

17  we've missed?

18          MR. HAFETZ:  Not from the government, Judge.

19          MR. JACOBSON:   No, Your Honor.

20          THE COURT:  All right.  So I find that you're been

21  acting voluntarily, that you fully understand your rights,

22  the charges against you, the rights you're giving up by

23  pleading guilty, the consequences of a guilty plea, including

24  the possible sentence and fine and how a guilty plea on this

25  obstruction count can and will affect your sentencing in the

1    material support charge; that you understand what a

2    consecutive sentence is and you understand what you're

3    stipulating to in the plea agreement.

4            You also understand that there's no guarantee what

5    your sentence will be at this time.

6            So I, therefore, recommend that the court accept

7    your plea of guilty to information.

8            Is there anything else we need to do?

9            MR. HAFETZ:  No, Judge.  Thank you.

10           MR. JACOBSON:   No, Your Honor.

11           THE COURT:  And so I'm supposed to tell you, Judge

12   Weinstein's chambers had asked that I consult with you and

13   set a later sentencing date for these two cases.  Any date

14   you choose would be fine, but Judge Weinstein had issued an

15   order.

16           Have you seen the order?  The recent order?

17           MR. JACOBSON:   We have, Your Honor.

18           MR. HAFETZ:  We have, Judge.

19           THE COURT:  So -- in which he was asking you to

20   provide expert witnesses and material as to assist with

21   sentencing.

22           MR. HAFETZ:  Correct.

23           THE COURT:  In that light, the March 14th date

24   seems unrealistic.

25           MR. HAFETZ:  Agreed.

1          THE COURT:  So are you prepared to come up with a

2     date now, or do you want to meet and consult and get back to

3     June shortly?

4          MR. JACOBSON:   I think the later, Your Honor  I

5     would need to consult with my experts, and co-counsel, and

6     with the government as well.

7          MR. HAFETZ:  That's fine Judge. Thank you.

8          THE COURT:  And 10:30 any day except Friday works.

9     So June said essentially that she'll make it work.

10          MR. JACOBSON:   Great.

11          THE COURT:  Okay?

12          MR. HAFETZ:  Thank you, Judge.

13          MR. JACOBSON:   Thank you, Your Honor.

14          THE COURT:  Thank you.  Good luck.

15       (Proceedings concluded at 2:08 p.m.)

16          I, CHRISTINE FIORE, court-approved transcriber and

17     certified electronic reporter and transcriber, certify that

18     the foregoing is a correct transcript from the official

19     electronic sound recording of the proceedings in the above-

20     entitled matter.

21

22     _Christine Fiore_

23     _____          April 19, 2019

24        Christine Fiore, CERT

25           Transcriber