

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:ICR/JGH  
F. #2016R00532

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 25, 2021

<u>By ECF and Email</u>

The Honorable Kiyo A. Matsumoto  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:    United States v. Sinmyah Amera Ceasar  
                <u>Criminal Docket Nos. 17-48, 19-117 (KAM)</u>

Dear Judge Matsumoto:

      The government respectfully submits this letter in opposition to the defendant's March 23, 2021 motion to hold her sentencing on her violation of supervised release in abeyance, and to move the Court to reconsider its March 24, 2021 order granting the motion and continuing the defendant's sentencing date from the previously scheduled date of April 12, 2021, to October 4, 2021.

      On Tuesday evening, the defendant filed a 14-page sealed letter motion accompanied by a number of exhibits, in which the defendant asked the Court to hold in abeyance the defendant's sentencing for her violation of supervised release. Prior to filing that motion, the defendant did not inquire of the government or the Probation Department as to their respective positions on the request, and thus did not indicate in that filing that both the government and Probation Department opposed the request to hold the defendant's sentence in abeyance.[1] Yesterday morning, the government and the Probation Department were instructed by email from the Court's deputy to submit a response to the motion by the close of business on today, Thursday, March 25, 2021. Subsequently, without the benefit of the

---

      [1]    Indeed, the government was unaware that the defendant intended to seek a modification of the scheduled hearing date until the defendant filed the motion. Defense counsel emailed the government to ask for an opportunity to discuss the motion only after it was already filed.

government or Probation Department's responses, the Court entered an order yesterday granting the defendant's motion and continuing the defendant's sentencing to October 4, 2021. For the reasons below, the government opposes the defendant's request, and asks the Court to reconsider its decision to continue the defendant's sentencing on the violation and to re-schedule the hearing for the originally scheduled date of April 12, 2021.

The defendant's 14-page letter principally argues that the Court should hold the defendant's sentencing on her violations of supervised release in abeyance while she participates in the "Disruption and Early Engagement Program" or "DEEP" initiative run by a non-profit organization, the Citizens' Crime Commission of New York City. In pressing this argument, the defendant also claims that the conduct underlying her violation of supervised release was not serious. As described below, the defendant's letter paints a misleading picture of the seriousness of her offense, and the government has serious reservations about the appropriateness of the defendant's participation in the DEEP program.

At the outset, the defendant's claims regarding the seriousness of her breach of the Court's trust are woefully inaccurate. The defendant's pervasive violations of supervised release and repeated, willful deception of the Probation Department will be the subject of a comprehensive sentencing memorandum, which the government has been preparing in anticipation of sentence and intends to file on or before March 29, 2021. The government requests that the Court withhold decision on the defendant's motion to hold her sentence in abeyance until after the Court has reviewed the government's sentencing memorandum. After doing so, the government respectfully submits that the Court will agree, based on the defendant's conduct, that it would be appropriate for the Court to impose an appropriate sentence on April 12, 2021 rather than delaying sentencing by six months.

The defendant's claims regarding her acceptance to DEEP are equally troubling. At bottom, as described below, the defendant's supposed "acceptance" to DEEP was based on incomplete information provided by defense counsel as well as the program's incorrect belief that the Probation Department supported the defendant's participation in DEEP.

DEEP was originally pioneered by the United States Attorney's Office ("the Office") and the Federal Bureau of Investigation's New York Joint Terrorism Task Force as a program to detect and disrupt individuals that law enforcement believes may be inclined toward targeted violence. The goal of the DEEP model is primarily the "disruption" of violent criminal conduct through "early engagement" with individuals *before* they complete the mobilization to violence and commit violent crimes. The program developed by the Office achieved this goal by encouraging partnerships between the Office, the FBI, local law enforcement, local community organizations, and mental health professionals.

In its current incarnation, DEEP is administered by the Citizens' Crime Commission of New York City, whose president is Richard Aborn. The Crime Commission's DEEP Initiative is similarly focused on providing an "alternative to arrest/prosecution/conviction for extremism cases" through "early prevention/intervention efforts to tackle violent extremism." Ex. A, Email from R. Aborn dated Mar. 1, 2021. The

2

Crime Commission's DEEP Initiative is "an early engagement initiative, which aims to intervene with individuals on a pathway to extremist behavior, stopping violence before it starts." Id. The DEEP Initiative does this by

> working one-on-one with low and medium risk individuals, who are court/law enforcement involved. DEEP tailors highly specialized interventions to their specific risks and needs. We address the behaviors that drive violent extremism with corresponding mechanisms of behavior change for this unique population. In order to achieve the sustained behavior change that is critical in this space, a long-term intervention is needed, with length varying depending on the participant.

Id.

Because the DEEP model developed by the Office and now administered by the Citizens' Crime Commission requires close engagement between law enforcement, community organizations and treatment providers, the government was surprised to learn—for the first time when the defendant filed her motion on Tuesday night—that the defendant has been "accepted" into the DEEP Initiative administered by the Crime Commission. The defendant was apparently "accepted" into the program not only without the knowledge of, or input from the FBI and the Assistant U.S. Attorneys who have investigated and prosecuted the defendant's cases for more than four years, but despite the objection of the defendant's Probation Officer, which the Probation Department had communicated to defense counsel.

Yesterday afternoon the government spoke with Mr. Aborn about the defendant's acceptance to the Crime Commission DEEP Initiative. The government learned that defense counsel contacted Mr. Aborn to request that the defendant be accepted into the DEEP Program. Mr. Aborn advised that the defendant's acceptance to the DEEP Initiative was granted based upon the understanding that the defendant had already completed her term of incarceration and was serving a term of supervised release. Mr. Aborn explained that defense counsel had expressed interest in obtaining help to prevent the defendant from reverting to corresponding with extremists when she became lonely, and mentioned that the defendant may have violated her terms of release by using one or more phone applications. Mr. Aborn was under the impression from his communication with defense counsel that the Probation Department supported the defendant's participation in the program.

Mr. Aborn explained that in accepting the defendant into the Crime Commission's DEEP Initiative, he was not aware that the government has appealed the defendant's sentence and is seeking to have her resentenced to a longer term of imprisonment, that the Probation Department had filed a violation report with the Court, that the defendant had already pleaded guilty to violating her conditions of supervised release and is awaiting sentencing on those violations, nor that the Probation Department had recommended that the defendant's supervised release be revoked and that the defendant be sentenced to serve an additional term of 12 months' imprisonment for violating her conditions of release. Further,

3

Mr. Aborn explained that he was not aware that the Probation Department had specifically objected to the defendant's participation in the DEEP Initiative on March 2, 2021, in an email that the defendant's Probation Officer sent in response to a request from defense counsel. Finally, Mr. Aborn did not know that the government was unaware of, and in fact opposed, the defendant's participation in the DEEP Initiative. Mr. Aborn advised the government that deciding whether to accept an individual into the DEEP Initiative is a highly fact-specific and individualized determination, and that he would have wanted to have the information set forth above before deciding whether to accept the defendant into the program.

As the government will detail in its sentencing memorandum, the defendant has repeatedly lied to and deceived her Probation Officer about her conduct on supervised release. The defendant has repeatedly violated conditions of supervised release imposed to aid Probation and the FBI in monitoring her behavior and communications while on release. The defendant has used unauthorized and undisclosed communications applications to communicate with supporters of jihadist ideology and convicted felons in violation of her conditions of release. The defendant has also repeatedly deleted electronic evidence of her violations of supervised release to conceal these violations from Probation, the FBI and the Court. And the defendant did all of this after having already pleaded guilty to obstruction of justice for committing similar violations of her release pending sentencing for conspiring to provide material support to a foreign terrorist organization. The defendant engaged in all of this conduct while receiving weekly mental health counseling and while maintaining frequent contact with her defense counsel and the mentor figure charged with assisting with the defendant's deradicalization. None of these tools mitigated the defendant's repeated deceptions of the Court and the Probation Department.

In sum, a diversion program designed to disrupt individuals who are mobilizing toward violence before they commit violent crimes is not a suitable program for the defendant, a recidivist felon with a demonstrated refusal to comply with even the most basic Court-imposed conditions of release. The government urges the Court to reject the defendant's latest effort to avoid accountability for her repeated breaches of the Court's trust, and to re-calendar

the sentencing hearing for the defendant's violation of supervised release to the previously scheduled date of April 12, 2021.

                                          Respectfully submitted,

                                          MARK J. LESKO
                                          Acting United States Attorney

                             By:   /s/ Ian C. Richardson
                                          Ian C. Richardson
                                          Josh Hafetz
                                          Assistant U.S. Attorneys
                                          (718) 254-7000

cc:    Clerk of Court (KAM) (by ECF and email)
        Deirdre Von Dornum (ECF)
        Samuel I. Jacobson (ECF)